UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

VANN CRUCE,            )
                       )
      Plaintiff,       )
                       )
vs.                    )   Civil Action Number
                       )   6:14-cv-00447-AKK
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                       )
      Defendant.       )

# MEMORANDUM OPINION

Plaintiff Vann Cruce brings this action pursuant to 42 U.S.C. §1383(c)(3) and 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Cruce filed his application for Title XVI Supplemental Security Income on March 1, 2010, alleging a disability onset date of March 1, 2009 due to a back injury, stroke, high blood pressure, depression, tears in his vertebrae, neurogenic

1

bladder, and migraines. (R. 105, 192, 222, 242). After the SSA denied his application on September 22, 2010, (R. 105-106), Cruce requested a hearing, (R. 139-141). At the time of the hearing on February 28, 2012, Cruce was 49 years old, had a twelfth grade education, and past work experience as a house painter. (R. 67, 73, 75). Cruce has not engaged in substantial gainful activity since July 1, 2010, his application date. (R. 20).

The ALJ denied Cruce's claim on October 26, 2012, (R. 15-43), which became the final decision of the Commissioner when the Appeals Council refused to grant review on February 18, 2014, (R. 1-4). Cruce then filed this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological,

3

or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals one listed by the Secretary;

(4)   whether the claimant is unable to perform his or her past work; and

(5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Cruce had not engaged in substantial gainful activity since his application date

4

and therefore met Step One. (R. 20). Next, the ALJ acknowledged that Cruce's severe impairments of degenerative disc disease, status post spinal surgery, obesity, headaches, and neurogenic bladder met Step Two. *Id.* The ALJ then proceeded to the next step and found that Cruce did not satisfy Step Three since he "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 25). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Cruce

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 416.967(b) except the claimant requires a sit/stand option at will as long as he is not more than 10% off task. He can never climb ladders, ropes, scaffolds, stairs or ramps. He is limited to jobs that can be performed while using a hand held assistive device required only for uneven terrain or prolonged ambulation. He can occasionally stoop, kneel, crouch, crawl, balance, climb ramps, and climb stairs. He can frequently reach, push, and pull. He should avoid all exposure to hazards such as unprotected heights and heavy machinery. He should avoid concentrated exposure to extreme cold, vibration, pulmonary irritants, humidity and wetness. He can occasionally operate foot controls. He must be allowed a five-minute break every hour for the hours that do not include regularly scheduled breaks or lunch.

(R. 25). In light of Cruce's RFC, the ALJ determined that Cruce, who previously had worked as a house painter, "[was] unable to perform any past relevant work." (R. 35). Accordingly, the ALJ turned to Step Five, where she considered Cruce's age, education, work experience, and RFC, and determined, based on the Medical

Vocational Guidelines found in 20 CFR Part 404, Subpart P, Appendix 2, section 201.19, interrogatory responses of a vocational expert ("VE"), and the hearing testimony of another VE, that "there are jobs that exist in significant numbers in the national economy that [Cruce] can perform." (R. 36, 320-325). Because the ALJ answered Step Five in the negative, she determined that Cruce was not disabled. *Id*.

### V. Analysis

Cruce challenges the ALJ's findings on three grounds: (1) that the off task time required by the sit/stand option in Cruce's RFC exceeded the off task time allowed by typical employers, (2) that the sit/stand option in Cruce's RFC mandated a finding that he could only perform "sedentary work," and (3) that the ALJ prejudiced Cruce by failing to obtain urodynamic tests to confirm Cruce's neurogenic bladder. Doc. 14 at 13-16. Based on these three contentions, which the court will address separately below, Cruce maintains that the ALJ's findings were not supported by substantial evidence.

### A. The ALJ Properly Relied on the VE to Determine that Cruce could Perform Other Work in the National Economy

Cruce challenges initially the ALJ's findings regarding off task time and the existence of available jobs that Cruce could perform. At issue is the ALJ's finding that Cruce "require[d] a sit/stand option at will as long as he is not more than 10%

off task . . . [and] be allowed a five-minute break every hour for the hours that do not include regularly scheduled breaks or lunch." (R. 25). Cruce maintains that this means the ALJ found that Cruce needed a total of 73 minutes of off task time – 48 minutes (i.e. 10%) in a standard 480 minute workday for the at will sit/stand option, and an additional 25 minutes[1] for periodic restroom breaks. Doc. 14 at 12-13. Consequently, because 73 minutes accounts for 15.2 percent of the workday, and in light of the VE's testimony that most employers allow no more than 15% of off task time during a workday, (R. 64), Cruce claims that the 15.2% of off task time the ALJ's RFC purportedly requires means that there are no other jobs he can perform. Doc. 14 at 13; *see also* (R. 36, 62-63, 324).

Cruce's contentions are unavailing because they are premised on his belief that the 10% off task time for the sit/stand option is separate and distinct from the five minute breaks referenced by the ALJ. Nothing in the ALJ's opinion supports such a reading. In fact, Cruce's interpretation highlights the ultimate flaw in Cruce's argument: he wants this court to make credibility determinations and to reweigh evidence already considered by the ALJ. However, this court does not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary." *Martin*, 894 F.2d at 1529. Rather, the court is tasked solely with

---

[1] In light of the standard morning lunch and afternoon breaks, the 25 minutes is based on a 5 minute restroom break per hour for each of the remaining five hours in the workday. (R. 27).

determining whether the substantial evidence supports the ALJ's decision. Based on the court's review of the record, the court finds that the ALJ properly received testimony from two separate VEs, both of whom testified that Cruce could perform other work that exists in the national economy, (R. 62-63, 320-324), and properly relied on them to determine whether Cruce's "skills can be used in other work and the specific occupations in which they can be used," 20 C.F.R. § 404.1566(e). While Cruce is free to disagree and to interpret one discrete piece of evidence differently than the two VEs, Cruce's contentions, however, do not mean that the ALJ's ultimate disability decision is not supported by substantial evidence, nor are they sufficient for Cruce to meet his burden of establishing that he is disabled. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### B. The ALJ Properly Determined that Cruce could Perform Light Work

Cruce contends next that the "sit/stand" option in his RFC is inconsistent with the ALJ's "light work" finding because, purportedly, "[l]ight work requires the ability to do a great deal of walking or standing [and] [Cruce] cannot work without an option to sit or stand at will." Doc. 14 at 14 (citing 29 CFR § 404.1567(b), which states in relevant part that "a job is in [the light work] category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . ."). According to Cruce, the sit/stand option in his RFC means that he is relegated

solely to "sedentary work" because of his inability to work in a job requiring substantial walking or standing. Doc. 14 at 14. Moreover, Cruce adds that, because he was 50 years old at the date of the hearing, and only had unskilled work experience and a high school education, a sedentary work determination would have directed the ALJ to find Cruce disabled pursuant to Grid Rule 201.12. *Id.* at 15; *see also* 20 CFR Part 404, Subpart P, Appendix 2, Table 1.

Contrary to Cruce's contentions, the regulatory definition of "light work" is not limited to jobs that involve "a good deal of walking or standing[.]" 20 CFR § 404.1567(b). In fact, "light work" may also include jobs that involve sitting primarily. *Id.* (stating that "a job is in this category when . . . it involves sitting most of the time with some pushing and pulling of arm or leg controls."). *See also Timmons v. Commissioner of Social Sec.*, 522 Fed. App'x 897, 906 (11th Cir. 2013) (a finding that an applicant can perform light work is consistent with the requirement of a sit/stand option). Consistent with the regulations, after considering Cruce's RFC, which included a sit/stand option, two separate VEs determined that Cruce could perform work as a mail clerk, (R. 62-63, 320-325), an office helper, and a labeler, all of which are classified as "light work." (R. 322, 324) (citing Dictionary of Occupational Titles §§209.687.026, 239.567.010, 761.684.022 (4th ed. 1991)). In short, because Cruce's argument hinges on a fundamental misreading of the regulatory definition of "light work," and because

9

the ALJ properly relied on the expert opinion of two VEs, the court determines that the ALJ's finding that Cruce can perform other work in the national economy is supported by substantial evidence.

### C. Cruce was not Prejudiced by the Lack of Urodynamic Testing

Finally, Cruce contends that the ALJ should have properly developed the record by obtaining urodynamic testing data to confirm Cruce's neurogenic bladder. Doc. 14 at 15. To sustain this contention, Cruce must show that the failure to obtain the data prejudiced him. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). As evidence of prejudice, Cruce asserts only that although the ALJ "ordered a urological consultative examination so that [Cruce's] 'neurogenic bladder' could be worked up[,] unfortunately [Cruce] was sent to an internist who did not perform any urodynamic testing." Doc. 14 at 15 (citing (R. 27)). While Cruce is correct about the absence of neurogenic bladder testing data, there is no prejudice because the ALJ found that Cruce's alleged neurogenic bladder constituted a severe impairment, (R. 20), fully credited Cruce's testimony regarding his urinary issues, (R. 27, 55-59), and included hourly bathroom breaks in Cruce's RFC, (R. 25, 27, 55-59). In light of the ALJ's decision to fully credit Cruce's testimony regarding the functional limitations of his urinary tract issues, *id.* Cruce cannot show that the presence of the neurogenic bladder testing data would have directed a finding of disability. Therefore, the failure of the ALJ to

procure urodynamic testing is not fatal to the Commissioner's ultimate finding that Cruce is not disabled.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Cruce is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 29th day of June, 2015.

*[signature]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE